ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,

v.

RIVERSIDE INSURANCE COMPANY OF AMERICA et al., Defendants.

No. 79–40246.

United States District Court,
E. D. Michigan, S. D.

Jan. 15, 1981.

Addendum Feb. 11, 1981.

J. Michael Fordney, F. J. Cady, III, Saginaw, Mich., for plaintiff.

Douglas I. Buck, Flint, Mich., Albert A. Chappell, William B. Daniel, Pontiac, Mich., for defendants.

### MEMORANDUM OPINION

NEWBLATT, District Judge.

This is an action for a declaratory judgment respecting a settlement entered into by certain parties to a wrongful death action now pending in state court.

On or about January 12, 1978, Wilhelm L. Linder was killed in an automobile accident when his vehicle collided with a vehicle owned by Raymond Ross (father) and driven by Michael Ross (son). On or about February 27, 1978, Linder's personal representative instituted an action for wrongful death against Michael Ross in the Circuit Court for the County of Genesee alleging negligence. In that suit, the Linder Estate seeks $250,000 plus costs, interest and attorney fees.

There are two insurance policies and consequently two insurance companies involved in this matter. Raymond Ross's vehicle was covered by a "no fault" insurance policy issued by Defendant Riverside Insurance

Co. of America (Defendant Riverside) and as an authorized driver, Michael Ross was covered by that policy. The Riverside policy had liability limits of $100,000 for each individual involved in a personal injury action. At the time of the accident, Michael Ross was also covered under a separate "no fault" insurance policy issued to him by Plaintiff Allstate Insurance Co. (Allstate). The Allstate policy had policy limits of $50,000 for each individual involved in an accident.

The dispute concerns the validity and effect of a covenant not to enforce judgment which covenant was entered into between the Linder Estate, Michael Ross, Raymond Ross and Riverside. See Appendix A. Under the terms of that settlement, Riverside agreed to pay $75,000 and Defendant Linder agreed to accept $75,000 as full satisfaction of any claim it might have against Riverside should the Linder Estate recover in the suit a judgment in excess of $75,000. While the Linder Estate reserved the right to proceed against Michael Ross and preserved any recovery it might be entitled to from Allstate, should a judgment exceed $100,000, the Linder Estate agreed not to proceed against Michael Ross and Raymond Ross personally for any judgment it might receive over and above Ross's insurance coverage.

Plaintiff Allstate instituted this action for declaratory relief against Defendants Riverside, Michael Ross and Raymond Ross claiming the agreement is against public policy and in derogation of its rights. Plaintiff relies primarily on a contract provision which provides that in the event there is other insurance, ". . . the insurance with respect to a nonowned automobile shall be excess insurance over any other collectable insurance." Allstate Policy: Section I, Part 1, p. 3.[1] Basically, Plaintiff contends that the settlement agreement alters the contract obligation of Allstate to its insured whereby it is only called upon to indemnify the insured once the policy limits of the primary insurance company have been exhausted. Plaintiff surmises that by compromising and releasing the primary insurer at $75,000 rather than $100,000, its own policy terms are not met, and its contract obligations are not invoked.

Plaintiff Allstate also contends that the agreement renders the state court proceeding a sham since the effect of a settlement would be to alter the adversary relationships among the parties and to make Allstate the only party with an interest in the action. Plaintiff asserts that the agreement obviated any possibility of a settlement among all the parties at a figure between $75,000 and $100,000 and that as the primary carrier, Defendant Riverside violated its duty to defend in good faith the interests of Allstate, the excess carrier. In a subsequent brief, Plaintiff cites and relies upon *U. S. Fire Insurance Co. v. Lay*, 577 F.2d 421 (7th Cir., 1977) in support of these theories.

Defendants move for summary judgment/dismissal asserting that the agreement entered into is clearly permissible under Michigan law and argue strenuously that under diversity jurisdiction, this Court is constrained to follow these cases.[2] See

1. Allstate Policy, Section I, Part 1, p. 3 provides as follows:

   Allstate shall not be liable under this Part I for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all collectable insurance against such loss: provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectable insurance.

2. They also distinguish the *U. S. Fire Insurance Co. v. Lay*, 577 F.2d 421 (7th Cir., 1977) decision cited by Plaintiff as involving excess carrier insurance imposing a contract obligation between the two insurance companies. In *Lay*, the primary insurance policy was Canal Insurance Co., having a limit of bodily injury liability of $100,000 as to each injured person, and the excess policy was with United States Fire Insurance Co., having a limit of liability of $1,000,000 for each occurrence for a loss in excess of the primary limits. The owner of the truck involved in the accident, International Comador of Memphis, negotiated a settlement similar to the one at bar and the primary insurer, defended the wrongful death action on behalf of Comador. As in the case at bar, Fire Ins. Co., the excess carrier, had knowledge of

*D.A.I.I.E. v. Kurak*, 81 Mich.App. 217, 265 N.W.2d 86 (1978); *D.A.I.I.E. v. Joseph*, 67 Mich.App. 393, 241 N.W.2d 221 (1976). They acknowledge that Michael Ross enjoys valuable contract rights under both insurance contracts and view this as a "stacking" case. They recognize that Riverside is a primary insurer since its policy covered the car which struck the deceased and further acknowledge that Allstate is not required to pay benefits until the policy limits of Riverside are exhausted. *See* Affidavit[3] Allstate Policy, fn. 1 *supra*. They contend however, that they have not interfered with the contract between Allstate and the insured since Allstate will not be called upon to make payment unless Linder (Plaintiff in the underlying action) proves and is awarded actual damages greater than $100,000. Riverside emphasizes that Allstate was afforded several opportunities to join the settlement but chose not to do so.[4] In response, Plaintiff relied on the arguments set forth earlier and also attempted to distinguish *D.A.I.I.E. v. Joseph, supra*, by noting that the two policies involved in that case were issued by the same insurance company and therefore did not present the question of a possible conflict of interests nor of interference with the contract of the excess carrier. *But see, D.A.I.I.E. v. Kurak, supra* (where two insurance companies were involved). Plaintiff made no attempt to deny the allegations that it was invited to participate in the settlement and opted not to.

In order to fully consider the nature of the contractual obligation between the insured and the two companies as well as any obligations between the companies themselves, this Court requested certain materials from the parties including the two contracts in issue.

Upon reviewing the arguments of counsel, the case law respecting settlements of this type and construction of contracts, and the particular contracts involved, this Court finds the agreement entered into is proper and not in derogation of Allstate's contract with the insured nor of the public policy of Michigan. The Court therefore declines to grant the declaratory relief sought by Plaintiff in this action. There are several factors which dictate this determination. They will be outlined below and discussed later in this decision.

■ The parties agree Michael Ross has valuable contract rights in both insurance contracts and do not dispute that recovery of the Riverside policy limit amount is a prerequisite for recovery under the Allstate policy. They differ only with respect to the effect of the settlement on the contract duties of Allstate. It is clear that this Court must look to state law on this issue. *See Erie Railway Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The cases cited by Defendants and the cases cited therein, are deemed to be controlling. *See D.A.I.I.E. v. Kurak, supra* and *D.A.I.I.E. v. Joseph, supra*. It is clear that "stacking" is permissible under Michigan law, *Boettner v. State Farm Mutual Ins. Co.*, 388 Mich. 482, 201 N.W.2d 795 (1972); *Blakeslee v. Farm Bureau Mutual*

---

and participated in the negotiations surrounding the agreed judgment entry but was not a party to that agreement.

(In a separate agreement with the administratrix and Comador, U. S. Fire Ins. Co. reserved its right to contend that it had no liability)

Defendant appears to argue that the *Lay* decision may be distinguished on the basis that it involved a *true excess policy*, that is, where the excess insurer explicitly undertakes to provide insurance with the knowledge that primary insurance coverage has already been purchased. This is often the case in commercial business situations where an "umbrella" policy may be purchased for a minimal cost beyond the premiums for primary insurance. Such is not the case at bar where two no-fault policies were purchased independently of one another.

3. Affidavit of Defendant's counsel filed May 1, 1980, along with Motion to Dismiss.

In this affidavit, Albert A. Chappell, attorney for Defendant Francis C. Linder, avers that Riverside kept Allstate fully aware of the state of the action against Michael Ross, and that Riverside's attorney contacted Allstate's claims agent and attorney on several occasions in order to appraise Allstate of progress in the negotiations for settlement, offered to include Allstate, and after their refusal, notified Allstate of the proposed settlement.

4. *Id.*

*Ins. Co.*, 388 Mich.. 464, 201 N.W.2d 786 (1972), and that while recovery under the primary policy is a prerequisite to pursuit of the excess coverage, it is not necessary to exhaust the first policy in order to proceed with a claim under the second policy so long as actual damages in the amount of the primary policy are shown. *See D.A.I.I.E. v. Joseph, supra.* The agreement entered into in this case does not affect the legal duty of Allstate to pay for actual losses which exceeded $100,000 up to its policy limits. As was pointed out in the Michigan cases referred to above, the Plaintiff in the underlying wrongful death action, will still be required to prove *actual* damages over and above $100,000 before recovering from the excess insurance company.

■ The Court notes that it is apparent the release was properly bargained for and that Allstate declined the opportunity to take part in it. *See* Affidavit of Counsel, fn. 3 *supra.* Allstate cannot now be heard to argue that the settlement entered into precluded a possible overall settlement between $75,000 and $100,000. Furthermore, with respect to Allstate's assertion that Riverside violated its duty to bargain in good faith for the interests of the excess carrier, the Court is unclear as to the precise basis for this proposed duty. *But see United States Insurance Co. v. Lay, supra,* and n. 2 *supra.* In any event, it is clear that Riverside's primary duty was to represent the interests of the insured. *See* Riverside Policy, Part II, 1.A.[5] Absent any showing that the release involved concealment, duress, fraud, mistake or similar irregularity, the Court will look to the express terms of the agreement and uphold its terms. *Auto Owners Ins. Co. v. Higby*, 57 Mich.App. 604, 226 N.W.2d 580 (1975). The

Court therefore declines to grant the relief requested in Plaintiff's complaint.

Here the excess carrier (Plaintiff) alludes to a vague duty the primary carrier is said to owe to it. The excess carrier completely omits discussion of the clear duty of the primary carrier to the insured. Assuming arguendo that there is some duty on the part of the primary carrier to the excess carrier, the potential conflict between that duty and the duty of the primary carrier to the insured must be addressed.

Here the Court perceives the Linder Estate as dealing with the primary carrier (Defendant Riverside herein) as follows: The Linder Estate may advise the primary carrier that because of its own evaluation of its claim, it is willing to settle the first $100,000 of the insured's liability for $75,000.[6] This would enable the estate to be assured of some money and afford the estate an opportunity to obtain a larger amount by giving up $25,000. Such settlement leaves open the possibility of recovery for liability on the part of the Rosses for any actual damages established which exceed $100,000 and relinquishes the possibility of getting $25,000 of the first $100,000. Certainly no strong objection could be made to the estate's motivation nor to its attempt to settle.

If the primary carrier (Defendant) were to decline, perhaps feeling that the agreement might impair its obligation (vague as it may be) to the excess carrier, (Plaintiff), the estate may respond with an additional incentive to the primary carrier. For instance, the estate may agree not to seek to satisfy any judgment rendered against the Rosses except out of the proceeds of any applicable insurance—that is, agree not to obtain satisfaction from the personal es-

---

5. Riverside Policy II, 1.A, p. 2 provides as follows:

   1. As respects such insurance as is afforded *by the other terms of this Policy under Coverages A and B*, the Company shall:
   A. Defend in his name and behalf any suit against the Insured arising from any alleged claim for bodily injury or property damage, whether such suit is groundless, false, fraudulent, or otherwise, but the Company shall have the right to conduct investigations as to

any such claim, negotiate for adjustment or settlement thereof, and to enter upon and conduct the defense of the insured against *the same as it may deem expedient without* waiving any of the provisions of this Policy or subjecting the Company to any liability beyond the limits provided in this Policy.

6. For example, to reflect the carrier's evaluation that the liability risk was 75%.

tates of Rosses. Nothing improper nor violative of any law or public policy about this arrangement has been called to the Court's attention and the Court perceives no impropriety. At this point the primary carrier, may be caught between two competing duties: first, to the excess carrier and second, to the insured.[7] Assuming the primary carrier, after evaluating the estate's case, determines that it runs a substantial risk of having to pay the full $100,000 were the case to go to trial and feels that a $75,000 payment is justified because of that risk, it may then find, in the face of the estate's offer to not pursue the insureds personally, that it has a duty to protect its insured by entering into the settlement thereby eliminating the insureds' exposure to personal liability. Thus, the primary carrier may enter into the agreement.

What is wrong with that evaluation by the primary carrier? Is it not sufficient that the primary insurer keep the excess insurer informed of the negotiations and provide it with the opportunity to participate in those negotiations? Why should the primary carrier be required to pursue its somewhat questionable duty to the excess carrier by rejecting the settlement, thus subjecting the insureds to personal liability? Would it not subject the primary carrier to a claim of bad faith by its insured if a judgment were ultimately rendered against the insured in excess of all applicable insurance coverages? *Where is it written that the duty of a primary carrier is greater to the excess carrier than it is to its own insured?* To ask these questions is to answer them.

The Court next asks: What the excess carrier has to complain about. The settlement has not enlarged the excess carrier's liability under its policy. The action can be defended exactly as it would have been defended had there been no settlement. The Court cannot perceive any difference between this case and any tort action where, before trial, the Plaintiff agrees not to seek any recovery against the tortfeasor in excess of the applicable insurance coverage if the tortfeasor admits liability. This is a common practice and to this Court's knowledge is not violative of any law or public policy.

The danger apprehended by Plaintiff Allstate is that the settlement is a sham and that its effect would be to alter the adversary relationships among the parties. No assertion is made as to *how* the settlement would alter these adversary relationships. It is true that the only party among those aligned with the tortfeasor (including both the primary and excess carriers) with a monetary liability at risk in the lawsuit is the excess carrier, Allstate. The Court now asks—So what? Again, this is not any different than a case in which the insurance carrier admits liability on behalf of its insured tortfeasor in return for the tort claimant's reduction of his claim to the limits of the policy. Of course the excess carrier may and does argue, in the guise of a claimed alteration of the adversary relationships, that the tortfeasor no longer has any risk or personal interest in the litigation, and thus may not cooperate, or may be reluctant to cooperate in the preparation and presentation of the defense. This is answered by the insurance contract provision which requires the insured to cooperate with the carrier and which vests in the carrier the exclusive control of the litigation.[8] In the event of a lack of cooperation

---

7. This assumes the Plaintiff is correct in its assertion of a duty on the part of the primary insurer to the excess carrier.

8. *See* Allstate Policy p. 1 ¶ 8:
   ¶ 8 Assistance and Cooperation
   The insured shall cooperate with Allstate, disclosing all pertinent facts known or available to him, and upon Allstate's request shall attend hearing and trials, and shall assist in effecting settlements, securing and given evidence, obtaining the attendance of witnesses

and in the conduct of suits, and, under Part 1, Section I and Section III, in enforcing any right of contribution or indemnity.
The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense, unless specifically provided for in this policy.
*See also*, Riverside Policy, Conditions ¶ 2, p. 7. Assistance and Cooperation of Insured:

or a contractual breach by the insured, the excess carrier may be relieved of its contractual obligation to pay. If the excess carrier is fearful that the insured may not testify honestly, dishonest testimony may void the carrier's obligation under the policy. In any event, the insured is obligated to testify honestly. The *possibility* of fraud by the insured is identical to the *possibility* of fraud in any other case. It must be emphasized that the fear or possibility of fraud is not sufficient to bar a claim or invalidate any otherwise valid settlement, *Auto Owners v. Higby, supra.*[9]

There is no question but that the public policy of the state of Michigan is to encourage settlements. *Auto Owners v. Higby, supra.* (Absent any showing that the release involved concealment, duress, fraud, mistake, or similar irregularity the courts will look to and uphold the express terms of the agreement). *See also* M.C.L.A. § 600.-2925d (release of certain tortfeasors does not discharge remaining tortfeasors). The settlement involved herein, by which Plaintiff seeks to avoid the excess carrier's liability to its insured has not been shown to be fraudulent nor violative of any public policy and will be upheld. The Plaintiff's request for Declaratory Relief is therefore denied.

One remaining factor should be dealt with more directly. As for Allstate's concern that it is the only Defendant with a distinct interest in the outcome of the action, the Court notes the possibility that Defendant Allstate may conduct the defense. *See* Allstate Section I, Part § 1, p. 1, Riverside II 1.A.[10] The obligation to undertake the defense of the tortfeasor is primarily an obligation of the primary carrier, Defendant Riverside. Such obligation to defend is ordinarily an independent obligation of the carrier. Assuming that the settlement with the primary carrier did not eliminate the obligation to defend the tortfeasor, the primary carrier retains the obligation to defend.[11] Should the excess carrier feel that it has no confidence in a defense provided by the primary carrier, the primary carrier may tender the defense to the excess carrier and assume the excess carrier's expense in that regard. Such an arrangement neither enlarges the primary carrier's obligation in this regard nor does it impose any additional burden on the excess carrier.

In view of the foregoing, Defendant Linder's motion (treated as a motion under FR CivP, 12, 56) is granted.

IT IS SO ORDERED.

The insured shall cooperate with the Company and upon the Company's request shall give written sworn statements, assist in effecting settlements, securing evidence, attending trials, obtaining the attendance of witnesses, and the conduct of suits, and perfecting and prosecuting appeals. The insured shall not, voluntarily give any written statements to others, make any payments, assume any obligation, or incur any expense, other than for such immediate medical and surgical relief to others, as shall be imperative at the time of the accident. As often as may be required, the Insured shall submit to examination under oath by any person named by the Company and subscribe the same.

9. Mere fear of possible fraud will not defeat claims. An analogy may be helpful. In the area of the so-called traditional "dead man's

statutes" which barred the testimony of a claimant against a deceased in order to support the claim, the courts long ago determined that the rigidity of the rule unfairly barred as many valid claims as it protected from invalid claims. Hence the courts have moved away from the traditional rigidity of the rule.

10. Allstate, Section I, Part 1, p. 1:

Allstate will defend, at its own expense and with counsel of its choice, any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this Section, but may make such settlement of any claim or suit as it deems expedient.

*See* also, Riverside, Part II, 1.A at n. 5 *supra.*

11. The release and settlement did not deal with this subject. *See* Appendix A.

APPENDIX A

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

FRANCIS C. LINDER, Administratrix
of the Estate of WILHELM L.
LINDER, Deceased,

          Plaintiff

—vs—

MICHAEL RAYMOND ROSS,

          Defendant

No. 47017

JUDGE RANSOM (P–19226)

COVENANT NOT TO ENFORCE
    JUDGMENT

ELBERT L. HATCHETT (P–14735)
Attorney for Plaintiff

DOUGLAS I. BUCK (P–11345)
Attorney for Defendant

In consideration of the sum of Seventy Five Thousand ($75,000:00) Dollars, receipt and sufficiency of which is hereby acknowledged, the undersigned, Francis C. Linder, as Administratrix of the Estate of Wilhelm L. Linder, Deceased, and by and on behalf of herself, individually, and each and every heir-at-law and next-of-kin, of the said Wilhelm L. Linder, Deceased, hereby covenants and agrees with Michael Raymond Ross and Raymond L. Ross to settle, compromise and extinguish against them, the right of the said Francis C. Linder, and the Estate of Wilhelm L. Linder, Deceased, and the heirs-at-law and next-of-kin of the said Wilhelm L. Linder, Deceased, from executing or in any way enforcing a Judgment against them or any of their property or assets, or the property or assets of either of them, including insurance policies, with the exception of the insurance policy of Allstate Insurance Company, in which Michael Raymond Ross is the named insured.

It is the intention of the parties to release and hold harmless from paying out any monies or assets the said Michael Raymond Ross and Raymond L. Ross and the Riverside Insurance Company and/or any of the companies of the Transamerica Insurance Group to the said Francis C. Linder, individually, and as Administratrix of the Estate of Wilhelm L. Linder, Deceased, or her successors or assigns, or to any of the next-of-kin or heirs-at-law of the said Wilhelm L. Linder, Deceased, resulting from the survival claim or the wrongful death claims arising out of the injury and resulting death of said Wilhelm L. Linder in an automobile accident on or about the 12th day of January, 1978, on Highway M–15 in the County of Genesee, State of Michigan, in which a car driven by Michael Raymond Ross and owned by Raymond L. Ross was involved in a collision with the said Wilhelm L. Linder.

In further consideration of said settlement sum, the said Francis C. Linder, individually and as Administratrix of the Estate of Wilhelm L. Linder, Deceased, agrees on behalf of herself and the Estate of Wilhelm L. Linder and all successors and as-

signs, as well as next-of-kin and heirs-at-law of said Wilhelm L. Linder, Deceased, to indemnify and hold harmless the said Michael Raymond Ross and Raymond L. Ross and Riverside Insurance Company or any of the companies of the Transamerica Insurance Group, from any costs or expense or payment out of any claim against them, or any of them, as a result of the claim for contribution, bad faith settlement, or any other recognized damage claim by the Allstate Insurance Company, for the manner in which this case is settled and for the exposure or additional burden which the Allstate Insurance Company might claim to bear as a result of this settlement.

In further consideration of said settlement sum, the said Francis C. Linder, individually and as Administratrix of the Estate of Wilhelm L. Linder, Deceased, agrees to indemnify and hold harmless the said Michael Raymond Ross and Raymond L. Ross and the Riverside Insurance Company and/or any of the insurance companies of the Transamerica Insurance Group, from any expense or cost with respect to the claims of any of the next-of-kin or heirs-at-law or creditors of the Estate of Wilhelm L. Linder, Deceased, or any of their successors and assigns, which may be brought against them as a result of the manner in which this settlement was approved, or the manner in which the settlement proceeds were distributed and apportioned.

In regard to the above, the said Francis C. Linder, as an individual and as Administratrix of the Estate of Wilhelm L. Linder, Deceased, as well as her successors and assigns, hereby agrees to execute any papers, documents, receipts or acknowledgments giving credit to the said Michael Raymond Ross and Raymond L. Ross and Riverside Insurance Company and/or any of the insurance companies of the Transamerica Insurance Group, in order to satisfy or extinguish any claims against them.

This Agreement is made without the admission of liability on the part of any of the parties hereto, and is a compromise settlement at a greatly reduced amount in order to reflect the liability defenses to said claim.

The intention of the parties hereto as manifested by this Covenant is to extinguish the first One Hundred Thousand ($100,000.00) Dollars of liability against Michael Raymond Ross and Raymond L. Ross and its primary insurer, the Riverside Insurance Company of the Transamerica Insurance Group. It is also to allow Plaintiff to proceed against the said Michael Raymond Ross and Raymond L. Ross in order to attempt to prove liability and to prove damages in excess of One Hundred Thousand ($100,000.00) Dollars; provided, however, that in event of a Judgment in excess of all available insurance policy limits, Michael Raymond Ross and Raymond L. Ross will not have to pay anything out of their own property or assets other than the policy limits of Allstate Insurance Company on the condition that they (the Rosses) assign over, upon demand, to the Plaintiff or her designatee, any and all claim for bad faith settlement dealings against Allstate Insurance Company.

Signed and sealed at Flint, Michigan, this _____ day of January, A. D., 1979.

WITNESSES:               SIGNED AND SEALED:

_____         _____
                         Francis C. Linder, Individually
                         and as Administratrix of the
                         Estate of Wilhelm L. Linder,
                         Deceased

_____

DOUGLAS I. BUCK, P. C.

Attorney at Law

3162 Flushing Road

Flint, Michigan 48504

238–9694

## ADDENDUM TO MEMORANDUM OPINION

A recent decision of the Court of Appeals for the Sixth Circuit fills the gaps in Michigan law and in the Seventh Circuit's *Lay* decision. The initial opinion was written assuming a "duty" of some sort exists between a primary carrier and the excess carrier. Hence the essence of that opinion dealt with the competing duties of the pri-

mary carrier to the insured on the one hand and to the excess carrier on the other. That analysis remains essentially sound. This addendum to the opinion however is intended to deal with the source of the alleged duty to the excess carrier.

In other than actions for declaratory judgments (such as the instant case), the backdrop of such a suit by an excess carrier against the primary carrier is most important and illuminating. The typical case arises where an offer is made by the tort claimant to settle a case within the limits of the primary policy. The primary carrier rejects the offer. The case is then tried and judgment is rendered in excess of the limits of the primary policy. At this point, the excess carrier usually pays the tort claimant the amount in excess of the primary carrier's limits, TAKES AN ASSIGNMENT FROM THE INSURED OR IS SUBROGATED TO THE INSURED'S RIGHT TO SUE THE PRIMARY CARRIER for actions in bad faith toward THE INSURED. *Valentine, v. Liberty Mut. Ins.*, 620 F.2d 583 (CA 6, 1980).

So it is apparent that there is no duty owed by the primary carrier to the excess carrier whatever and Plaintiff's cause of action herein must fall for there can be no breach where there is no duty.

Had this cause come before the Court in the traditional manner,—the excess carrier asserting the insured's right against the primary carrier,—it would have been readily apparent that the excess carrier was asserting the insured's right. And of course, since the insured is a party to this suit, the excess carrier is here asserting the insured's right against the insured. This is of course nonsense. The only cause of action conceivable here would be an action by the insured (or someone standing in the shoes of the insured) against the primary carrier and not *against* the insured for the excess carrier is really asserting the insured's right. The duties owed to the excess carrier by the insured are specified in the policy and no breach of any such terms are alleged. And even if such breach of contract allegations had in fact been made, it could hardly be said that the insured must expose himself to personal liability to protect one of his carriers whom he had paid to protect him.

In this case therefore the Court holds (first) that there is no duty owed by the primary carrier directly to the excess carrier and (second) that there is also no duty actually owed by the insured to the excess carrier which is alleged to have been breached.

In *Valentine*, it was held that in Michigan, to establish a cause of action against an insurance carrier by its insured (or its assignee or subrogee), the Plaintiff must show that the insurance carrier's (here, the primary carrier) actions were motivated by a selfish purpose to protect its interest at the expense of its insured's interest. *Valentine*, p. 586. No such showing or allegation has been made nor can it be made for the primary carrier's settlement protected the insured.

The Motion is Granted.