Frank J. KELLEY, Attorney General of the State of Michigan, and the State of Michigan, Plaintiffs and Counter Defendants,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN RAILROAD CO., Counter Plaintiff and Cross–Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas, Cross–Defendants.

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN RAIL-ROAD, Counter Defendant and Third Party Plaintiff,

v.

Richard E. THOMAS as Trustee of the Richard E. Thomas Living Trust, the Richard E. Thomas Living Trust, and Letha Thomas, Third Party Defendants.

UNITED STATES of America, Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; Richard E. Thomas; and Grand Trunk Western Railroad Company, Defendants.

GRAND TRUNK WESTERN RAILROAD COMPANY, Cross–Plaintiff,

v.

THOMAS SOLVENT COMPANY; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent, Inc. of Indiana; TSC Transportation, Inc.; and Richard E. Thomas; Cross–Defendants.

THOMAS SOLVENT COMPANY and Richard Thomas, Counter Plaintiffs,

v.

GRAND TRUNK WESTERN RAILROAD COMPANY, Counter Defendant and Third Party Plaintiff,

v.

Richard E. THOMAS as Trustee of the Richard E. Thomas Living Trust; the Richard E. Thomas Living Trust; and Letha Thomas, Third Party Defendants.

File Nos. K86–164, K86–167.

United States District Court, W.D. Michigan.

Nov. 15, 1991.

See also 790 F.Supp. 719.

Robert P. Reichel, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Environmental Protection Div., Lansing, Mich., Steven J. Willey, Asst. U.S. Atty., Joel M. Gross, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Enforcement Section, Washington, D.C.; John A. Smietanka, U.S. Atty., by Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich.; Roger Grimes, Asst. Regional Atty., U.S. Environmental Protection Agency, Chicago, Ill.; and Frances McChesney, U.S. Environmental Protection Agency, Enforcement & Compliance Monitoring Office, Washington, D.C., for Frank J. Kelley, Atty. Gen., State of Mich. and the U.S.

Charles E. Barbieri, John L. Collins, Foster, Swift, Collins & Smith, P.C., Lansing, Mich.; James M. Sullivan, Sullivan, Hamilton, Schultz, Allen & Letzring, Battle Creek, Mich.; Mary P. Sclawy, Grand Trunk Western R. Co., Law Dept.; Frederick J. Dindoffer, and R. Craig Hupp, Bodman, Longley & Dahling, Detroit, Mich., for Thomas Solvent Co., Thomas Development, Inc., Thomas Solvent Company of Muskegon, Inc., Thomas Solvent Company of Detroit, Inc., Thomas Solvent, Inc. of Indiana, TSC Transp., Inc., Richard E. Thomas, Grand Trunk Western R. Co., Letha, Steven Floyd, Carol J., Steven R., Gregg S., and Todd M. Thomas, Carol Living Trust.

Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, Mich.; J. Gordon Arbuckle, John C. Martin and David J. Farber, Patton, Boggs & Blow, Washington, D.C.; Eugene E. Smary, Warner, Norcross & Judd, Grand Rapids, Mich.; Mary Beth Cyze, Susan M. Franzetti, Gardner, Carton & Douglas, Chicago, Ill.; David J. Hayes, Peter L. Winik, Latham & Watkins; Timothy C. Russell, Stuart E. Hunt, Sonnenschein, Nath & Rosenthal, Washington, D.C.; Michael L. McCluggage, Thomas Daggett, Wildman, Harrold, Allen & Dixon, Chicago, Ill.; John R. LaParl, Jr., Smith, LaParl & Mequio, Portage, Mich.; Michael H. Perry, Fraser, Trebilcock, Davis & Foster, P.C., Lansing, Mich.; Grant J. Gruel, Gruel, Mills, Nims & Pylman; Charles M. Denton, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich.; Jack W. Montgomery, III, Michael H. Ginsberg, Alder, Cohen & Grigsby, Pittsburgh, Pa.; Richard W. Paulen, Barnes & Thornburg, South Bend, Ind.; Millard N. Mayhall,

Schroeder, DeGraw, Kendall & Mayhall, Marshall, Mich.; Jerome C. Muys, Jr., Swidler & Berlin, Chartered, Washington, D.C.; John R. Dresser, Thomas C. Megargle, Dresser Law Office, P.C., Sturgis, Mich.; Thomas F. Karaba, Crowley, Barrett & Karaba, Chicago, Ill.; Daniel P. King, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, Mich.; John Gerald Gleeson, Harvey, Kruse, Westen & Milan, P.C., Troy, Mich.; J. William Dark, James, Dark & Brill; James W. Smith, Hatch & Smith; Gary P. Bartosiewicz, Piatt, Bartosiewicz & Tiderington, P.C., Kalamazoo, Mich.; Charles R. Bappert, Biringer, Hutchinson & Van Doren, P.C., Coldwater, Mich.; David L. Maurer, Lynn Einheuser Penman, Pepper, Hamilton & Scheetz, Detroit, Mich., for amici curiae.

## OPINION

ENSLEN, District Judge.

This case is before the Court on the parties' motions for entry of a partial consent decree and judgment, which was lodged with this Court on December 14, 1990. The proposed partial consent decree would resolve the claims of the United States and the State of Michigan against Richard E. Thomas and other individual defendants, the Thomas Solvent Company, and certain related Thomas companies for past costs, under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), incurred in response to the contamination of the Verona Well Field and nearby sources of that contamination in Battle Creek, Michigan. Subsequent to the lodging of the partial decree, the United States Department of Justice published notice of the settlement in the Federal Register and received public comment concerning the merit and effect of the partial decree.[1] Having considered the comments received, this Court agrees with all the parties that the settlement reflected in the decree is fair, reasonable, and con-

sistent with the purposes and goals of CERCLA.

## I. Facts

The facts of this case are very familiar to the Court.[2] In these two actions, which have been consolidated for pretrial proceedings and for trial, the United States and the State of Michigan (State) assert claims under section 107 of CERCLA, 42 U.S.C. § 9607, for the recovery of response costs incurred in connection with the contamination of the Verona Well Field. The governments seek judgments with respect to costs incurred to date and a declaratory judgment that defendants are liable for costs to be incurred in the future. The State also asserts a claim under section 107 of CERCLA for recovery of natural resource damages.

The Verona Well Field is the primary public water supply source for Battle Creek, Michigan, and serves approximately 35,000 residential, commercial, and industrial customers. In the summer of 1981, the Michigan Department of Public Health discovered that the Well Field was contaminated with various organic solvents, principally trichloroethylene, tetrachloroethylene, 1,1,1 trichloroethane, and their derivatives.

Subsequent hydrogeological studies conducted by state and federal agencies identified three sources of the contamination. Two of the sources, the Thomas Solvent Raymond Road Facility (Raymond Road) and the Thomas Solvent Annex (Annex), were facilities that had been operated by Thomas Solvent Company, which, prior to its bankruptcy in 1984, had been a distributor of industrial solvents in Battle Creek, as well as elsewhere. The Raymond Road facility was owned first by the Thomas Development, Inc. and later by the Thomas Solvent Company. The second source site, the Annex, was leased by Thomas Solvent from Grand Trunk Western Railroad (Grand Trunk). The third source site, the

---

1. Notice of the lodging was published in the Federal Register on January 9, 1991; *see* 56 Fed.Reg. 875.

2. For a fuller recitation of the facts, *see Kelley v. Thomas Solvent Co.,* 727 F.Supp. 1532 (W.D.Mich.1989); *Kelley v. Thomas Solvent Co.,* 717 F.Supp. 507 (W.D.Mich.1989).

Marshalling Yard, was owned and operated by Grand Trunk.

Since 1982, the United States and the State of Michigan have been engaged in response actions with respect to the Verona Well Field contamination and the contamination of the three source areas. The Verona Well Field is listed on the National Priorities List, established by the Environmental Protection Agency (EPA) pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, as one of the sites at which the release of hazardous substances presents the greatest threat to public health and environment. The governments' response actions are continuing and will probably not be completed for many years.

## II.  Provisions of the Proposed Partial Consent Decree

■ The proposed partial consent decree provides for the entry of judgments against the Thomas defendants in favor of the United States for past response costs, in favor of the State of Michigan for past response costs and natural resource damages, and in favor of Grand Trunk for contribution. The United States and the State will obtain judgments against each of the corporate Thomas defendants[3] for $9,772,640 and $2,102,260 respectively, plus interest. This judgment represents approximately 97% of the outstanding past costs being resolved under the decree. The settlement also provides that the corporate defendants will be liable for future costs incurred at the sites. The operating corporate defendants will be liquidated with the net proceeds divided between the sovereigns in proportion to their respective judgments. The Thomas defendants, including certain members of the Thomas family, which have insurance claims against 14 primary and excess insurers, have agreed with one of their insurers, USF & G, to rescind certain USF & G policies in exchange for which USF & G will pay $3,935,-000, an amount which is approximately the aggregate limits of the rescinded policies.

The United States will obtain judgment against the primary individual defendant, Richard E. Thomas, for $2 million and the State will obtain a judgment against him for $700,000. These judgments will resolve claims against Richard Thomas for past costs and, with certain exceptions, for future costs at these sites, and, in the case of the State, for damages to natural resources. To encourage Richard Thomas both to pursue the liquidation of the remaining companies in order to maximize return and to pursue the coverage claims against remaining insurers, there are provisions for the reduction of these judgments against Richard Thomas personally, but not to be reduced below $205,000. There are provisions for small payments (totaling $10,000) to be made to the governments by Thomas's wife and sons, against whom claims were asserted regarding their receipt of conveyances from Richard Thomas.

Finally, the partial decree contains provisions resolving the claims between the Thomas Solvent related parties and the other defendant, Grand Trunk. Certain claims of the United States and the State against Grand Trunk were resolved in a Partial Consent Decree entered by the Court on June 5, 1989.

## III.  Standard

The Superfund Amendments and Reauthorization Act of 1986 (SARA), as codified at 42 U.S.C. § 9622, authorizes a variety of settlement agreements that the EPA may utilize to settle CERCLA cases. Included in this authorization are consent decrees providing that potentially responsible parties (PRPs) contribute to cleanup costs. According to the legislative history, when the parties submit to the court such a consent decree for approval, the court should limit its review to that which is necessary to " 'satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve.' " H.R.Rep. No. 253, Pt. 3, 99th Cong. 1st Sess. 19 (1985), *reprinted in*

---

3. The corporate Thomas defendants are: Thomas Solvent Company; Thomas Development, Inc.; Thomas Solvent Company of Detroit, Inc.; Thomas Solvent Company of Muskegon, Inc.; Thomas Solvent Inc. of Indiana; and TSC Transportation Company.

1986 U.S.C.C.A.N. 3038, 3042, *cited in U.S. v. Cannons Engineering Corp.*, 899 F.2d 79, 85 (1st Cir.1990); *Kelley v. Thomas Solvent Co.*, 717 F.Supp. 507, 516 (W.D.Mich.1989).

The Sixth Circuit has recognized the value of consent decrees and other voluntary settlements, especially in cases involving complex factual and legal issues where statutory compliance is of utmost importance to the public welfare. *Stotts v. Memphis Fire Dept.*, 679 F.2d 541, 554–53 (6th Cir.1982) (Title VII actions) *rev'd on other grounds sub nom. Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.) (patent litigation), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *see also Patterson v. Newspaper & Mail Deliverers' Union*, 514 F.2d 767, 771 (2d Cir.1975) (CERCLA actions), *cert. denied sub nom. Larkin v. Patterson*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). In its review of a consent decree, the Court should bear in mind that "[p]ublic policy strongly favors settlement of disputes without litigation.... By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter." *Aro*, 531 F.2d at 1372. There is perhaps a presumption of enforceability when the governmental agencies charged with enforcing the environmental statutes worked toward and approve of the consent decree. *See United States v. Hooker Chemical & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir.1985).

## IV. Discussion

### A. The consent decree is fair and reasonable

In *Kelley v. Thomas Solvent Co.*, 717 F.Supp. 507, 517 (W.D.Mich.1989), this Court considered the factors set forth in *United States v. Hooker Chemical & Plastics Corp.*, 607 F.Supp. 1052 (W.D.N.Y.), *aff'd.*, 776 F.2d 410 (1985), for determining whether a consent decree in a CERCLA action is fair and adequate. The court should consider "the strength of plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved." *Id.* at 1057. After a consideration of these factors as applied to this case, there is no doubt that the consent decree at issue in this case is fair and reasonable.

Plaintiffs unquestionably have a strong case. By the time the negotiations for the consent decree had been completed, the Court had granted summary judgment on the liability of each of the corporate defendants and on the United States' entitlement to $800,000 in costs. The Court had also adopted a legal standard on the scope of review of costs that was highly favorable to plaintiffs.

Good faith is demonstrated in this case by the parties' steadfast determination and hard work to produce a compromise in a case involving a large amount of money and conflicting concerns. A finding of good faith also requires procedural fairness. *Cannons*, 899 F.2d at 86. The parties to this decree negotiated many of the consent decree provisions with court assistance and at arms length. A court-appointed special master and a United States Magistrate Judge guided most of the discussions. The give-and-take of the later negotiations is reflected in a number of the provisions of the decree (such as the judgment reduction provisions applicable to the judgments entered against Richard Thomas personally) which are complex precisely because of the need to accommodate competing settlement needs of the various parties.

■ The Court granted permission for certain amici parties, most of whom are defendants or third-party defendants in two separate actions regarding the Verona Well contamination, *United States v. General Foods Corp.*, Civ. No. 1:90–CV–39 (W.D.Mich.), and *Grand Trunk Western Railroad Co. v. Acme Belt Recoating, Inc.*, Civ. No. K87–364, 1990 WL 164724 (W.D.Mich.), to file an amicus curiae brief in response to plaintiffs' motion for entry of the partial consent decree. The amici argue that the consent decree is unfair

because it precludes the amici from recovering in contribution any liability imposed on them which is attributable to the Thomas parties. The amici seek an amendment of the partial consent agreement to incorporate the 1977 Uniform Comparative Fault Act (UCFA) to ensure that all parties, settlers and non-settlers, are only liable for their proportional share of liability.

Given that the judgments against the Thomas parties represent such a large percentage of their proportionate liability, I find the amici's argument to be without substantial merit. If the Thomas parties pay the judgments in full, the maximum liability of the General Foods defendants, without applying comparative fault principles, would be quite small and not an unfair risk. Pursuant to the decree, if the judgments are not paid in full, the Thomas defendants will not receive contribution protection. Decree ¶ X.I. Moreover, the amici's argument that the consent decree should contain a provision that would reduce their liability by the amount of the settlers' equitable shares, not by the amount of the settlement judgment is without statutory support and inconsistent with congress's intent to promote early settlement. According to the express terms of the statute, a settlement "reduces the potential liability of the others by the amount of the *settlement*." 42 U.S.C. § 9613(f)(2) (1987) (emphasis added).

The amici also argue that the governments have failed to include a broad allocation scheme to ensure that the shortfall from the partial consent agreement does not impact only one category of costs. As a result, they contend, the amici may bear a greater proportion of liability than is required by law because they are only alleged to be liable for some of the costs.

The amici have not, however, provided any specifics to support this view. The basis for their argument is their perception that the allocation scheme included in the decree was "designed for the benefit of Grand Trunk." Amici Brief at 6. However, as pointed out by the government, the interests of the amici and Grand Trunk are largely congruent. Both the amici and Grand Trunk are allegedly liable for the costs incurred at the Annex and the Well Field, but not the Raymond Road sites. They were both concerned that the governments would allocate any monies received only to the Raymond Road site because the governments have little likelihood of identifying other PRPs at that site. To the extent that the decree prevents this in regard to the "Gap Response Costs",[4] the amici also benefit because they too are potentially liable for the Gap Response Costs.

The governments maintain that the allocation scheme will provide for a fair and complete distribution of the funds. The amici have presented no facts to support the contrary. Moreover, if the amici disagree with the allocation, they may challenge the scheme in defending the claims against them in the *General Foods* action.

Finally, some commentators[5] state that the partial recision of the USF & G policy may prejudice them by impairing their ability to pursue claims on the USF & G policy and other excess policies. Third party beneficiaries claim that the agreement is unfair because it will compromise their alleged rights under the insurance contracts. Pursuant to Michigan law, this claim is without merit. At this time, these parties have no judgment against the Thomas defendants and no contractual rights in the insurance agreements. *See Kowalski v. Holden*, 276 F.2d 359, 360–61 (6th Cir.1960) (plaintiffs have no rights in trial between defendant and its insurer); *Voss v. Stranahan*, 248 Mich. 390, 227 N.W. 542 (1929) (injured party has no rights under defendants' insurance policy even after judgment against defendant when, upon request, insurance company paid proceeds to defendant/insured). Moreover, settling a claim with a primary carrier under the primary carrier's limits does not release the excess carrier from liability. *Detroit Auto Inter–Ins. Exch. v.*

---

4. The Gap Response Costs are those costs for which Grand Trunk may still be liable.

5. The amici have not raised this issue in their brief submitted to this Court for consideration.

*Joseph,* 67 Mich.App. 393, 395–96, 241 N.W.2d 221 (1976). The excess carrier remains liable for any losses in excess of the primary policy limits. *Allstate Ins. Co. v. Riverside Ins. Co.,* 509 F.Supp. 43, 48 (E.D.Mich.1981).

*B. The proposed partial consent decree is in the public interest and furthers CERCLA's goals*

As with settlement of plaintiffs' claims against Grand Trunk, this proposed partial consent decree implements the statutory policies underlying CERCLA and is in the public interest. *Kelley,* 717 F.Supp. at 518. There are two primary policy concerns underlying CERCLA: 1) that the United States be given the authority to secure " 'a prompt and effective response to problems of national magnitude resulting from hazardous waste contamination,' " *Kelley,* 717 F.Supp. at 518; and 2) that those responsible for the contamination bear the cost and responsibility for remedying it. *Cannons,* 899 F.2d at 90–91.

The proposed partial consent decree effectuates both policies. It recovers money for the superfund and the State of Michigan for use at other sites. Such pretrial agreements conserve superfund and judicial resources. Moreover, they are consistent with congressional intent. Congress intended to promote settlements by protecting settling parties from exposure to future contribution actions instituted by nonsettling responsible parties. *U.S. v. Cannons Engineering Corp.,* 899 F.2d 79, 92 (1st Cir.1990) (citing H.R.Rep. No. 99–253, 9th Cong., 1st Sess., pt. 1, at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862).[6]

Absent settlement, there are significant remedies that would not have been obtained by prevailing at trial. For example, pursuant to the decree, $1.7 million will be paid to the governments from the proceeds of the USF & G recision agreement, and a pool of money is made available for the continued litigation of the insurance coverage issues. These results could not have been obtained in litigating this action alone, nor could they have been obtained without the concurrence of the Thomas parties.

The partial consent decree represents a reasonable compromise of plaintiffs' claims. The decree will result in substantial returns for the governments. These include: (1) $1.7 million from the USF & G proceeds; 2) all of the proceeds from the liquidation of the remaining Thomas companies; 3) $10,000 from Thomas family members; and 4) whatever additional amounts can be realized on the $12 million plus in judgments to be entered against the Thomas corporations and the $3.5 million in judgments entered against Richard Thomas. The judgments against the Thomas defendants represent approximately 97% of the response costs attributable to the Thomas defendants' proportionate liability. I find that the partial consent decree adequately adheres "to principles of comparative fault according to a volumetric standard, determining the liability of each PRP according to volumetric contribution." *Cannons,* 899 F.2d at 88. As a result of entry of the decree, it is also significant to note that defendants' stipulations relating to future liability will substantially reduce the need for future litigation.

## IV. Conclusion

I grant plaintiffs' joint motion for entry of the partial consent decree. I find that the decree is fair, reasonable, consistent with CERCLA, and in the public interest.

---

**6.** The SARA amendments specifically provide that contribution actions cannot be maintained against parties that have settled. 42 U.S.C. § 9613(f)(2) (1987).